Mark R. Pachowicz (SBN 138108)
mark@pachowicz.com
Jennie Hendrickson (SBN 144562)
jennie@pachowicz.com
**PACHOWICZ | GOLDENRING, APLC**
6050 Seahawk Street
Ventura, CA 93003-6622
Tel: (805) 642-6702 / Fax: (805) 805-642-3145

Attorneys for Plaintiff, ESTATE OF ANDREW RICARDEZ, Deceased,
Through His Successor in Interest Rick Ricardez and RICK RICARDEZ,
Individually

Sonia M. Mercado (SBN  117069)
Soniamer2002@yahoo.com
**SONIA MERCADO & ASSOCIATES**
5711 W. Slauson Ave., Suite 100
Culver City, California 90230
Telephone: (310) 410-2981; Fax: (747) 264-1841

Attorneys for Plaintiff ANGELA PEREZ, Individually and as Successor in
Interest

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ESTATE OF ANDREW RICARDEZ, Deceased, through his Successor in Interest Rick Ricardez, and RICK RICARDEZ, individually and as Successor in Interest; ANGELA PEREZ, individually and as Successor in interest,<br><br>          Plaintiffs,<br>          vs.<br><br>COUNTY OF VENTURA, a public entity; VENTURA COUNTY SHERIFF'S DEPARTMENT; SHERIFF BILL AYUB, individually and in his official capacity as Sheriff; CALIFORNIA FORENSIC MEDICAL GROUP, INC. (AKA Correctional | **Case No.**<br><br>**Assigned to Hon.**<br><br>**COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL:**<br><br>1. Deliberate Indifference to Medical Care (42 U.S.C. § 1983);<br>2. Supervisory Liability Causing Constitutional Violations (42 U.S.C. § 1983);<br>3. Policies, Customs, Practices Causing Constitutional Violations (Monell, 42 U.S.C. § 1983);<br>4. Violation of ADA, Rehabilitation |

1  Medical Group Companies, Inc. and
2  Wellpath); H.I.G. CAPITAL, INC.;
   TAYLOR FITHIAN, M.D.,
3  individually and in his official capacity;
   PAUL ADLER, D.O., individually and
4  in his official capacity; RONALD
   POLLACK, M.D., individually and in
5  his official capacity; DOE NANDA;
   JUSTIN R. REYNA, individually and in
6  his official capacity; KIP HALLMAN,
   individually and in his official capacity;
7  ELAINE HUSTEDT, individually and
8  in her official capacity; and DOES 1
   through 10, inclusive.
9
              Defendants.
10

11

Act, and California Unruh Act;
5.  Violation of Government Code
    § 845.6;
6.  Violation of Civil Code § 52.1;
7.  Negligence; and,
8.  Medical Negligence.

12

13              **COMPLAINT FOR DAMAGES**

14

15      Plaintiffs, ESTATE OF ANDREW RICARDEZ, through his successor

16  in interest, Rick Ricardez and RICK RICARDEZ, individually and as

17  successor in interest, by and through their attorneys, PACHOWICZ |

18  GOLDENRING APLC, and ANGELA PEREZ, individually and as successor

19  in interest by and through her attorneys SONIA MERCADO AND

20  ASSOCIATES, bring their Complaint for Damages and allege against

21  Defendants as follows:

22              **INTRODUCTION**

23  1)   This is a civil rights action to establish the true facts surrounding the death of
24       ANDREW RICARDEZ on January 5, 2019.

25  2)   Plaintiffs seek to hold Defendants accountable for violations of state law and
26       fundamental rights under the U.S. Constitution which resulted in the death of
27       ANDREW RICARDEZ.
28

3)   ANDREW was a 31-year-old young man, who suffered from a serious but treatable mental illness that caused him to have suicidal ideations.   On November 24, 2018, he suffered a mental health breakdown manifested by bizarre behavior which resulted in his arrest at the Ventura County Jail.  The jail custody and medical staff knew that he was mentally ill, suicidal and that his bizarre behavior prior to and while in jail was due to his mental illness that required supervision, medical care and/or hospitalization.  Defendants knew that if left without medical care and supervision, it was foreseeable that ANDREW's condition would deteriorate to the point where he could commit suicide.  His repeated requests for help to Defendants were ignored.  For seven days prior to his death, as his health spiraled in decline, Defendants acted with deliberate indifference to his risk of suicide by abandoning his medical care and treatment.  Foreseeably, on January 5, 2019, having been left without medical care and appropriate supervision in an isolated cell, ANDREW was discovered after he committed suicide.

4)   The failure to provide reasonable medical care and security to sick inmates like ANDREW was a well-known unconstitutional pattern and practice of H.I.G./CFMG and COUNTY. For years prior to ANDREW's death, the COUNTY and H.I.G./CFMG individual defendants and entities knew that there existed at the Ventura County jail and with CFMG ominous risks of harm or death to sick or mentally ill inmates.   Defendants failed to provide reasonable mental health care or access thereto, they were understaffed and/or incompetently staffed, failed to provide proper housing, failed to adequately monitor mentally ill patients diagnosed as suicidal, among other unconstitutional practices (see ¶44 et. seq.).  H.I.G./CFMG had disincentives that discouraged employees from sending patients to a hospital or a higher level of care than they could provide at the jail.  These unconstitutional customs and practices, among others, were a foreseeable contributing moving force of

ANDREW's death. An independent contractor performing medical services for prisoners may be subject to the *Monell* standard for liability under section 1983 to the same extent as a government entity. *See West v. Atkins*, 487 U.S. 42, 54-56 (1988).

5)   COUNTY Defendants failed to adequately monitor the administration of the contract with H.I.G./CFMG even though they had been repeatedly alerted to the facts of this unconstitutional conduct and knew the jail had become unsafe for those with serious mental health needs like ANDREW. COUNTY hoped to avoid accountability by attempting to transfer to CFMG their non-delegable constitutional duty to provide detainees like ANDREW reasonable security and access to medical care.

6)   "Just as a prisoner may starve if not fed, he or she may suffer or die if not provided adequate medical care. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 563 U.S. *, 131 S.Ct. 1910, 1928 (2011). A pretrial detainee, such as ANDREW, has a right to receive medical care from Defendants which includes the right to psychiatric treatment. *Gibson v. County of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002).

7)   As a result, ANDREW physically and mentally suffered before his preventable death. His death has caused a profound and unimaginable loss to his parents that have left them deeply traumatized and will haunt them all their life.

**JURISDICTION AND VENUE**

8)   This action is brought for redress of alleged deprivations of constitutional rights protected by 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution. Federal question jurisdiction is

founded upon 28 U.S.C. §§ 1331 and 1343(a) (3) and (4), and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

9)  Plaintiffs timely and properly filed tort claims pursuant to Cal. Gov. Code § 910 et seq., on July 1, 2019, which claims were rejected on July 23, 2019, and this action is timely filed within all State and Federal applicable statutes of limitations.

10) The acts complained of herein arose in the Central District of California, County of Ventura and venue properly lies in this district pursuant to 28 U.S.C. section 1391, and is also proper under § 1391 (b) (1) in that one or more defendants resides or have their principal place of business in the Central District.

## **PARTIES**

### **PLAINTIFFS.**

11) The <u>ESTATE OF ANDREW RICARDEZ</u> (hereinafter "ANDREW"), who died without issue on January 5, 2019, is represented by his successors in interest, his parents Rick Ricardez and Angela Perez.

12) At all times herein, ANDREW was a mentally disabled pre-trial detainee at Ventura County Jail. The death certificate lists the circumstances surrounding the death as "drowned self in jail cell toilet," at Ventura County Jail.

13) <u>RICK RICARDEZ</u> (hereinafter "Mr. Ricardez") is the natural father of ANDREW, and <u>ANGELA PEREZ</u> (hereinafter "Mrs. Perez"), is the natural mother of ANDREW. They bring this suit pursuant to 42 U.S.C. § 1983 and CCP §§ 377.20 and 377. 60, et. seq. which provide for wrongful death and survival actions. Plaintiffs' Declarations of the Successors in Interest are filed in this action.

**VENTURA COUNTY DEFENDANTS.**

14) Defendant <u>COUNTY OF VENTURA</u> ("COUNTY") is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls Defendant <u>VENTURA COUNTY SHERIFF'S DEPARTMENT</u> ("VCSD"), also a public department of the COUNTY, which employs other defendants in this action.

15) COUNTY and VCSD contract with CFMG (acquired by H.I.G. in January 2013) to provide through its employees, agents and representatives medical, dental and mental health care to VCSD and COUNTY jails.  In this respect, CFMG and H.I.G., through its executives, officers, leadership, employees, agents and representatives provide a governmental function and stand in the same capacity as COUNTY and VCSD in carrying out their duties at the VCSD jail.

16) Defendant <u>SHERIFF BILL AYUB</u> (hereinafter "Sheriff AYUB"), was and is the Sheriff and administrator of the County jail and custodian of the pre-trial detainees within it, along with DOES 1-10, who were deputies, sergeants, captains, lieutenants, commanders and undersheriffs and/or civilian employee agents, policy makers and/or agents and representatives of COUNTY and the VCSD.  He was charged by law and was responsible with the administration of defendant VCSD and its employees, and for the supervision, training and hiring of persons, agents and employees working within said VCSD, including officers, deputies, and DOES 1-10, inclusive. Sheriff AYUB is sued in his personal and individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others.  Sheriff AYUB's affirmative conduct involves his failure to

ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury. Sheriff AYUB failed to adequately monitor the administration of the contract with H.I.G./CFMG even though he had been repeatedly alerted to the facts of this unconstitutional conduct and knew the jail had become unsafe for those with serious mental health needs like ANDREW.

## H.I.G./CFMG DEFENDANTS.

17) Medical care providers, employees and agents (such as H.I.G./CFMG), employed by a government entity are state actors for 42 U.S.C. § 1983 purposes acting under color of law when treating inmates and/or implementing policies and practices regarding provision of medical care. *West v. Atkins,* 487 U.S.42, 54 (1988).

18) Private managers, executives, managers, owners, directors, board members, supervisors, (such as H.I.G./CFMG) employed to direct the delivery of medical care to inmates are state actors acting under color of law for purposes of § 1983. *Id.*

19) At all material times, each of H.I.G/CFMG supervisors, managers or executives were responsible for the hiring, retaining, training, and supervising of the conduct, customs, policies and practices of its member employees and agents of H.I.G./CFMG including DOES 1-10. CFMG (then and now owned by H.I.G.) on information and belief with approval of H.I.G., entered into a contract on January 1, 2016 with COUNTY to provide for medical and mental health services of those incarcerated and detained at VCSD jail facilities, which runs through June 30, 2021.

20) Defendant <u>CALIFORNIA FORENSIC MEDICAL GROUP</u>, (AKA

CORRECTIONAL MEDICAL GROUP COMPANIES Inc. or "CMGC"[1] since 2013, and now AKA as WELLPATH, since October 1, 2018)[2], hereinafter they will jointly be referred to as "CFMG". CFMG is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to the COUNTY, Sheriff AYUB, VCSD and its jail system. It has a business address in Monterey County and in San Diego County, and since October 1, 2018, in Nashville, Tennessee as Wellpath.[3] At all material times, CFMG was responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of the CFMG, including DOES 1-10.

21) CFMG was initially founded by Dr. Taylor Fithian and Elaine Hustedt in 1983 as a private for-profit correctional health care provider who at all relevant times herein, providing services to approximately 65 correctional facilities in 27 California counties (including Ventura and VCSD), or about 90 percent of outsourced county jail private medical care in California.[4]

---

[1] H.I.G. acquired CFMG, rebranding its name under the umbrella of Correctional Medical Group Companies (CMGC) in 2013, see, https://www.linkedin.com/company/correctional-medical-group-companies-inc-, and https://www.linkedin.com/company/ca-forensic-medical-group.

[2] October 1, 2018, H.I.G. Capital, LLC announced acquisition and joining of forces of CMGC (albeit CFMG) with Correct Care Solutions ("CCS"), creating a partnership with management, to be headquartered in Nashville Tennessee. https://higcapital.com/news/release/1128. This acquisition was rebranded and renamed Wellpath. https://en.wikipedia.org/wiki/Correct_Care_Solutions. CMGC website advertises that it was founded in 1983 (the year CFMG was created) and gives notice that "We are now Wellpath!" See, www.cmgcos.com; https://www.linkedin.com/company/correctional-medical-group-companies-inc- https://www.bizjournals.com/nashville/news/2018/1/07/one-of-nashvilles-largest-private-companies-merges.html.

[3] CFMG sets itself up as incorporated in Nashville Tennessee. See, http://www.buzzfile.com/business/California-Forensic-Medical-Group,-Incorporated-831-649-8994.

[4] Brad Branan, *California for-profit company faces allegations of inadequate inmate care,* January 17, 2015, Sacramento Bee, at p. 4.

22) Defendant <u>H.I.G. CAPITAL LLC</u>, (hereinafter "H.I.G.") is a private equity firm doing business in California. It acquired CFMG in 2013[5] and is the owner, manager and partner of CFMG (aka CMGC and now known as Wellpath[6]) employed to provide delivery of medical services to inmates and was and is responsible for the management, hiring, retaining, training, and supervising of the conduct, policies and practices, customs, standards, finances, of its employees, managers, supervisors, contractors, leaders in the service of providing medical care to inmates, including inmates such as ANDREW at VCSD jail, including DOES 1-10. CFMG executives, directors, supervisors and managers, physicians, nurses, LVN and mental health providers act on behalf of H.I.G. and CFMG. H.I.G. is the alter ego of CFMG. There is unity of interest and ownership such that the separate personalities of H.I.G. and CFMG no longer exist as CFMG acts with the consent, management, approval, ratification and direction of H.I.G. Henceforth, H.I.G. and CFMG will be jointly and/or severally referred to as "H.I.G./CFMG".

23) Defendant <u>TAYLOR FITHIAN, M.D.</u> (hereinafter "Dr. FITHIAN"), at all times mentioned herein, was and is the founder and President of CFMG and an employee and/or agent of H.I.G./CFMG, COUNTY and VCSD, who was and is the psychiatric Director of CFMG and Chief of Behavioral Health Services in VCSD. He was and is the on-site psychiatrist responsible for establishing policies and practices for CFMG employees at VCSD jails and was and is

---

www.sacbee.com/news/investigations/the-public-eye/article7249637.html.
[5] H.I.G. Capital Announced Strategic Investment in California Forensic Medical Group, Jan. 7, 2013. https://higcapital.com/news/release/621. CFMG is also known as Correctional Medical Group Companies (CMGC). https://higcapital.com/portfolio/company/277m.
[6] Wellpath web page announces that it was founded in 1983 (the year CFMG was founded) and that it was formerly known as CMGC, CFMG and CCS. See https://pitchbook.com/profiles/company/55890-10 and www.wellpathcare.com.

1
2
3
4
5
6
7
8
9

responsible for training, supervision and management of CFMG-VCSD employees including doctors, psychiatrists, nurses, and nurse practitioners, and VCSD custodial staff concerning the provision of medical and mental health treatment to civil detainees including pre-trial detainees such as ANDREW.  He had a duty and responsibility to meet with CFMG mental health providers, including but not limited to psychiatrists, physicians, nurses working on-site at VCSD jails to recommend, implement, review and supervise behavioral health programs at VCSD jails.  Defendant Dr. FITHIAN is sued in his individual and official capacity for damages.

10
11
12
13
14
15
16
17
18
19

24) Defendant <u>PAUL ADLER, D.O.,</u> (hereinafter "Dr. ADLER"), at all times mentioned herein was and is the on-site Medical Director of CFMG at VCSD, and is the physician responsible to provide medical care, attention and treatment to civil all detainees including pre-trial detainees such as ANDREW at VCSD jails. He was and is responsible for creating and/or implementing H.I.G./CFMG policies and practices governing the provision of medical health treatment for all civil detainees including pre-trial detainee inmates at VCSD jails.   He provided medical care and treatment to ANDREW and is sued in his official and individual capacity for damages.  Defendant Dr. ADLER is sued in his individual and official capacity for damages.

20
21
22
23
24
25
26
27
28

25) Defendant <u>RONALD POLLACK, M.D.</u>, (hereinafter "Dr. POLLACK"), at all times mentioned herein, was and is an employee and/or agent of H.I.G./CFMG, COUNTY, and VCSD, who was and is the on-site psychiatrist at VCSD jails hired to provide mental health treatment to all civil detainees and pre-trial detainees.  He was, and is, responsible for the supervision and management of subordinate mental health staff providing mental health treatment and supervision to detainees and inmates and was a psychiatrist responsible for the care of ANDREW.  He was responsible for medical orders and delivery of mental health care by subordinate mental health staff providing mental health

treatment and supervision to ANDREW and was responsible for the mental health care of ANDREW.  Defendant Dr. POLLACK is sued in his individual and official capacity for damages.

26) Defendant <u>DOE NANDA,</u> (hereinafter "Doe NANDA"), whose real name, title, profession and identity is not yet known, but who appears at all times mentioned herein to be an employee and/or agent of H.I.G./CFMG, COUNTY, VCSD, was and is a mental health care practitioner and/or employee and/or agent who is identified in medical records as "Nanda" or "Dr Nanda."  He was responsible for medical orders and delivery of mental health care by subordinate mental health staff providing mental health treatment and supervision to ANDREW and was responsible for the mental health care of ANDREW.  He is sued in his individual capacity.

27)  Defendant <u>JUSTIN R. REYNA,</u> (hereinafter "REYNA"), was and is an Executive and Board Member of CFMG and also a Managing Director of H.I.G.  He had and has the duty and responsibility to establish and carry out H.I.G./CFMG goals, policies, and procedures; to direct and oversee the organization's financial and budgetary activities, and manage general activities related to making managing, supervising, directing decisions overseeing CFMG medical provider operations, including the delivery or lack thereof of medical and mental health care services to inmates, including those at the VCSD Jails. Defendant REYNA is and was responsible for promulgation of policies, procedures and allowance of the practices/customs pursuant to which the acts of H.I.G./CFMG and its employees and agents, alleged herein were committed. Defendant REYNA is sued in his individual and official capacity for damages.

28)  Defendant <u>KIP HALLMAN,</u> CEO, (hereinafter "HALLMAN"), is and at all times herein mentioned was the Executive Officer for CFMG. He is also

President of Wellpath[7] a national for profit private correctional health care conglomerate acquired by H.I.G., that has subsumed CFMG (aka CMGC and CCS), which are all under the ownership, supervision, management and direction of H.I.G./CFMG.  HALLMAN had and has the duty and responsibility for managing and overseeing all CFMG medical delivery operations, including those at the VCSD Jails.  HALLMAN is and was responsible for promulgation of policies, procedures and allowance of the practices/customs pursuant to which the acts of H.I.G./CFMG and its employees and agents, alleged herein were committed.  Defendant HALLMAN is sued in his individual and official capacity for damages.

29)  Defendant ELAINE HUSTEDT, hereinafter "HUSTEDT"), is a co-founder, vice-president, treasurer and is and was at all times mentioned herein CFMG Chief Operation Officer (COO) and had the duty and responsibility for overseeing all H.I.G./CFMG operations at the COUNTY and VCSD Jails affecting all aspects of delivery of medical care to detainees, such as ANDREW.  She is and was responsible for promulgation of policies and procedures and allowance of the practices/customs pursuant to which the acts of H.I.G./CFMG and its employees and agents, alleged herein, were committed.  Defendant HUSTEDT is sued in her individual and official capacity for damages.

30)  At all material times, all medical providers and DOES 1-10 held themselves out as being qualified and skilled in the practice of medicine, and as possessing that degree of knowledge and skill ordinarily possessed and exercised by other

---

[7] https://higcapital.com/portfolio/company/277m, in 2018 H.I.G. acquired Correction Care Solutions (CCS, previously run by Hallman), which merged with CMGC to create Wellpath.  See, https://en.wikipidia.org/wiki/Correct Care Solutions.  H.I.G. announced its acquisition of these companies (which are now known as Wellpath), each represent that they were founded in 1983, which is the year CFMG was founded.

skillful medical care providers in their specialties and areas of practice.

**DOE DEFENDANTS.**

31) The true names and capacities of COUNTY/VCSD DOE Defendants and H.I.G./CFMG DOE Defendants sued herein collectively as DOES 1-10, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint to show their true names and capacities when the same are ascertained.

32) Each DOE defendant was an employee/agent of the COUNTY, VCSD, H.I.G./CFMG, and/or of each other, and at all material times acted under color of law within the course and scope of that relationship. Plaintiffs are informed and believe that each of the DOE Defendants sued herein acted intentionally or was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs. Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants. The acts and omissions of all DOE Defendants were at all material times pursuant to the actual customs, policies, practices and procedures of the COUNTY, VCSD and/or H.I.G./CFMG.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

33) Plaintiffs reallege each and every paragraph alleged in this Complaint as if fully set forth here.

34) ANDREW RICARDEZ suffered from schizophrenia diagnosed at 28 years old, a serious but treatable mental health illness. When treated in the past he was able to recuperate and carry out normal life's activities. Prior to November 24, 2018, he had attended some college and was employable and working as a shipping loader. He had previously received treatment at Hillmont mental

health facility in Ventura.  With appropriate medication and treatment he continued to enjoy life's activities, to have strong loving and bonding relationships with his parents, siblings and other family members.  He was the youngest of three sons and resided with his parents in Ventura benefitting from the mutual love of his parents, brothers, nephews and other family members.

### (a) Deliberate Indifference and Failure to Provide ANDREW Reasonable Mental Health Care and Supervision.

35)  On or about November 24, 2018, as a result of his mental illness, ANDREW experienced hallucinations, paranoia and suffered a breakdown.  He expressed bizarre behavior, was ranting and became delusional and paranoid.  He hallucinated that his father was evil or inhabited by demons and was hearing voices directing him to harm his father.  While Mr. Ricardez worked on his car in the home garage, ANDREW's mental illness worsened and in his delusional state he grabbed a screw driver and attacked his father seriously hurting him.  Realizing that ANDREW was experiencing a mental health relapse, Mr. Ricardez called 911 for emergency help for himself and for ANDREW.  Upon the responders' arrival Mr. Ricardez immediately and repeatedly shouted to them that ANDREW was mentally ill and having a crisis, begging them not to hurt his son.

36)  Mr. Ricardez was taken to the hospital and ANDREW was arrested for assault and incarcerated as a pretrial detainee at VCSD jail operated by the COUNTY and overseen by Sheriff AYUB.  ANDREW had never been incarcerated.

37)  At the point of processing ANDREW into the jail the VCSD, COUNTY, Sheriff AYUB, H.I.G./CFMG, ADLER, POLLACK, Doe NANDA and their employees, agents, and DOES 1-10 all knew or should have known about ANDREW's pre-trial detainee status of incapacitating mental illness.  At booking he was noted to be suicidal, going through methadone withdrawal, depressed, hearing voices and incapacitated by his mental illness.  Initially, he

was placed in the level 1 psychiatric observation cell, which should be the highest priority safety precautions unit, where inmates are to be closely and continuously observed by custody and medical staff for suicide attempts, self-harm or harming others.

38) Defendants knew that ANDREW's mental health condition was serious but with appropriate and indicated medical and mental health care and treatment, and appropriate competent custodial and medical supervision, these were treatable mental health conditions.

39) ANDREW reported to Defendants that he had prior admissions to Hillmont Psychiatric Facility, a local well-known mental health psychiatric hospital where he was diagnosed with schizophrenia and received treatment. He asked to be sent there. His psychiatric and mental illness history was documented in Defendants' jail records beginning on November 25, 2018, in a summary-diagnosis of "schizophrenia at 28, hospitalized two weeks ago; suicidal statements upon booking, hospitalized two weeks ago for auditory hallucinations." His medications at the COUNTY jail included Haloperidol, (Haldol); and Klonopin, to treat psychotic disorders, which all defendants knew or should have known per their own files and records. Haldol specifically has a black box warning issued by the FDA, the most serious of warnings concerning its side effects when administered to agitated patients, such as ANDREW.

40) Medical records document that during the weeks preceding ANDREW's suicide, Defendants had repeated and ample notice of his ongoing deteriorating mental health condition and threats of suicide. He was an acutely suicidal inmate: he engaged in self-injurious behavior, reported voices were telling him to kill himself, stabbed his neck, slammed his head against the wall, tied a sock around his neck and threatened suicide with a specific plan to jump of the top tier. At different times ANDREW asked for medications, or to be placed in a "rubber cell," or to be continuously watched, including a request to be housed

in a quieter cell and requested to be sent to Hillmont (a mental health treatment center nearby).  Medical staff documented that he was "in and out" of suicide watch.  He was improperly housed with other inmates and as predictable given his critical mental health condition, an altercation ensued.  National Minimal Correctional Health Care Standards indicate that he should have been placed in continual observation by medical and custodial staff as he had a critical need for urgent mental health care and treatment that required a higher level of care and treatment than Defendants could provide in jail.

41) H.I.G./CFMG defendants and DOES 1-10 acted with deliberate indifference to ANDREW's medical needs: they maintained incompetent staff, were understaffed, allowed non-physician staff to make medical decisions and issue medical orders; on December 29th, he was again discontinued from suicide watch level 1 (one) safety precautions and rehoused alone in a cell they knew or reasonably should have known to be poorly designed and contraindicated for ANDREW; Defendants failed to provide adequate, competent and timely safety checks and to provide treatment, security, supervision and/or access to indicated needed mental health care abandoning his care and treatment, thus enabling and contributing to his death.

42) Sheriff AYUB and DOES 1-10 failed to provide ANDREW reasonable security and safety and acted with deliberate indifference to ANDREW's safety and security when they made the deliberate choice to house a suicidal mentally ill inmate upon his release  from suicide watch in an isolation or sobering cell that was defectively designed and lacked adequate audio and/or visual patient observation, whose location was not visible to the watch deputy; they failed to take adequate measures to protect ANDREW.  The jail lacked sufficient and adequate number of safety cells or beds to house mentally ill and suicidal inmates such as ANDREW, and defendants knew or should have known, that

after repeated efforts by ANDREW to harm himself while in jail, his housing was in violation of Title 24 and Title 15.

43)  Sheriff AYUB and VCSD DOES 1-10 acted with deliberate indifference and ignored these hazards, thus contributing to and enabling ANDREW's death.  As foreseeable, given Defendants' deliberate indifference to ANDREW's health care, on January 5, 2019, ANDREW was discovered with his face submerged in the toilet bowl.  Although time entries on records vary, at 11:03 a.m. Paramedics were noted at his side and transported him to a hospital for "cardiac arrest" where he was subsequently pronounced dead.

**b) Defendant Supervisors Had Knowledge of Inadequacy of Suicide Prevention and Delivery of Mental Health Care at Ventura Jail and Failed to Take Corrective Action.**

44)  Prior to January 5, 2019, high level COUNTY, VCSD and CFMG/HIG, supervisors, FITHIAN, ADLER, POLLACK, HUSTEDT, HALLMAN, REYNA, SHERIFF AYUB knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside the jail facility hospital or other mental health programs, failure to take corrective measures, including ignoring Ventura County Grand Jury recommendations not to rehire CFMG, ignoring judicial orders to abate or take corrective action regarding care to the mentally ill, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates.  The number of lawsuits against CFMG at VCSD and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants'

years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

45) As a preamble, between <u>March 1997 to 2013</u> COUNTY and CFMG defendants had notice of a slew of cases giving revealing constitutional violations of inmates' rights to reasonable medical care.  On information and belief before acquiring CFMG in January 2013, H.I.G.'s due diligence would have revealed these breaches of constitutional mandates:

    a)  (1999) *Madera v. Ventura County, CFMG,* 2:97-cv-01859-CM, failure to provide medical and hospital access; 23-year-old died from septic shock caused by tonsillitis (settled for $750,000); *Perez v. Ventura County, CFMG,* SA CV 98-3051 WDK, failure to provide access to hospital; 19-year-old died from a sinus infection that spread to his brain (settled for $800,000). [8]

    b)  (2001) COUNTY was considering whether to renew a $22.9 million contract with CFMG despite a report that the private healthcare provider "*places profit above patient care and that the Sheriff's Department overlooks the situation because it is not liable for malpractice lawsuits...*" (emphasis added), remarking that CFMG's insurance covers losses.[9]  The L.A. Times reported that the death rate for Ventura County jail inmates from 1987 to 2000 was the 4th highest among the states 20th largest jail systems also contracted by CFMG.  *Id.* at ¶2.  A Ventura County Superior Court Judge hearing a case in which CFMG was sued, stated, "They seem to dodge the issue as far as medical care. They don't want to spend the money to do it.

---

[8] Daryl Kelley, *Quality of Jail Medical Care Questioned*, Los Angeles Times, December 27, 2001, at pp 3-4, https://www.latimes.com/archives/la-xpm-2001-dec-27-me-18313-story.html,

[9] See also: *Critics Question 'Unusually High' Death Rate Among Inmates in Ventura County Jails*, January 4, 2002, California Healthline Daily https://californiahealthline.org/morning-breakout/critics-question-unusually-high-death-rate-among-inmates-in-ventura-county-jails/

My response is to sue them." *Ibid*, L.A. Times Dec. 27, 2002, at p.1.

46) In 2009 mentally ill Hernandez committed suicide in VCSD jail. CFMG mental health providers were aware of his condition yet he received "no treatment for his mental health condition in the three months prior to his suicide and grossly insufficient monitoring, and thereby contributed to his death." The case settled $775,000.[10]

47) 2010-2011: COUNTY Grand Jury noted that of the 11 largest jails in California, although Ventura County had the smallest population it had the most suicides, 48, than all other large Counties (except Sacramento, who had 65 suicides but whose population was 45% larger than Ventura's). [11]

48) 2012 – 2013: the COUNTY Grand Jury gave notice of great concern in their *In Custody Death Final Report* and recommended,

> "… that the Ventura County health care agency and the VCSD conduct a search for a competitive medical group to ensure standards of care are met and carried out. The mission of the Ventura County's incarceration policies should reflect the mission of the VCSD." [12]

The Grand Jury reported the death of a woman due to bacterial sepsis, rampant infection. The report found that a contributing factor in her death was "… a lack of timely medical care while in custody and, a lack of documentation and its discrepancies led the inability of staff to adequately assess her condition." (*Id.*, Findings: 06 & 07 pg.4).

---

[10] Brad Branan, *California for-profit company faces allegations of inadequate inmate care*, January 17, 2015, Sacramento Bee, at p. 4, "Staffing Profit." www.sacbee.com/news/investigations/the-public-eye/article7249637.html

[11] *2010 – 2011 Ventura County Grand Jury Inmate Processing and Suicide Prevention in the Ventura County Jail*, May 31, 2011, at p.4, Table 2 (discussing an 11 year review to 2010, noting 2 suicides in 2010 and 13 known attempted suicides). https://www.ventura.org/grand-jury/

[12] 2012 – 2013 *Ventura County Grand Jury in Custody Death Final Report* June 27, 2013, [*Id.*, Summary ¶ 4, p. 1 and Findings 06 p.4]. https://www.ventura.org/grand-jury/

49)  <u>Jan 7, 2013,</u> H.I.G. Capital a "leading global private equity investment firm," announced its acquisition and partnership with CFMG:

> CFMG is the leading provider of outsourced healthcare services for county jail inmates in California… H.I.G. has partnered with Dr. Taylor Fithian … Elaine Hustedt… to continue to ensure that CFMG is the leading outsourced provider of healthcare services to county correctional facilities…. "We have found a wonderful partner in H.I.G., who understands how important CFMG is to our customers and employees and shares our vision for continued prosperity for the Company," said Dr. Taylor Fithian. 'We are excited to work with H.I.G. given their experience investing in the healthcare and corrections sectors,' noted Elaine Hustedt.  (See *supra* fn. 4 at p.8.)

50)  H.I.G. and CFMG have unity of ownership and unity of interests.  Given their very lucrative financial interests, H.I.G.[13] controls and manages CFMG: it placed REYNA (a tenured H.I.G. Managing Director), and HALLMAN in-house at CFMG to manage, supervise, direct and lead CFMG.  H.I.G. knew or should have known at the time it acquired CFMG that the medical and mental health care provided by CFMG at VCSD jails was inadequate, incompetent and understaffed and that such conditions, customs, practices had previously led to constitutional violations of detainees and inmates, caused serious bodily harm and/or death of inmates/detainees, and that unless abated and remedied, it was foreseeable that such harm and/or death would continue to re-occur.

51)  <u>Jan. 2015,</u> ignoring the Grand Jury 2012-2013 report that COUNTY conduct a search for another competitive medical group, CFMG, VCSD, COUNTY (with consent and approval of H.I.G.) proceeded with negotiations for renewing CFMG's contract at VCSD.

---

[13] *One of Nashville's largest private companies merges with California firm, changes name.* https://www.bizjournals.com/nashville/news/2018/11/07/one-of-nashvilles-largest-private-companies-merges.html

52)  On <u>May 25, 2015</u>, Raya, a mentally ill, bipolar, and delusional 31-year-old,[14] arrested for releasing a neighbor's canaries from a cage, was found by the court to be incompetent to stand trial ("IST") and ordered transported to Patton State Hospital.  Defendants ignored the Court Order and despite completion of all required documents for transfer, Raya wasn't transferred and committed suicide in jail.[15]  The case settled for $750,000.[16]

53)  <u>Dec. 28, 2015,</u> despite these startling red flag warnings of CFMG's ongoing failure to provide reasonable medical care, COUNTY and CFMG renewed their contract to provide "medical services" at the jails - the operative contract in this Complaint.  In part, CFMG receives a flat annual rate of about $11,180,080, agrees to pay the first $17,500 or portion thereof of any inmate hospitalization, to maintain a medical malpractice policy minimally of $2 million per occurrence and $5 million aggregate and will indemnify, and to hold harmless and waive all rights of subrogation against all COUNTY.  COUNTY pays a flat contract rate, provides the work spaces, equipment and computers, medical records, is not responsible for CFMG worker employment issues and expects to be free of liability.

54)  The ACLU and other attorneys who have sued CFMG, point to contracts which pay the company a flat amount per year which include that all medical care will be provided at the expense of the company, thus giving the for-profit company a financial incentive to increase their profits by limiting their costs, providing less medical and mental health care to the inmates, regardless of how

---

[14] *Guadalupe Raya v. County of Ventura, CFMG et al*, C.D. Cal. Case No. 2:15-cv-076 73-CBM (JCx) Docket 49, Second Amended Complaint, at pp. 7-8, ¶¶ 17-18.

[15] *Ibid* Docket 49, Second Amended Complaint, at pg. 9, ¶ 22.

[16] Statement of Brian A. Osborne, Co-counsel for Plaintiff Guadalupe Raya, Sept 5, 2019.

1    many doctor visits or prescriptions are needed.[17]

2    55) As of February 9, 2016, H.I.G./CFMG Defendants knew or should have

3    known that "there have been more than twelve Incompetent to Stand Trial

4    [IST] detainees … Who have been approved for transportation to Patton, but

5    have not yet been transported."  The Sheriff and CFMG were well aware of

6    this pattern and practice and they made,

7    "…no effort to provide adequate treatment to civilly committed IST
8    detainees which has inevitably resulted in the deterioration of the
9    mental health conditions of these detainees," and, these defendants
     have "failed to take corrective action and Solozano's suicide was a
10   clearly foreseeable risk which unfortunately materialized."[18]

11   56)  Presently pending in the Central District of California is *M. S. v. CFMG* a

12   class action filed by families of 29 mentally ill detainees alleging denial of

13   proper medical and mental health treatment by CFMG at COUNTY Jail and

14   delays in transporting detainees to state mental hospitals after they had been

15   found by a Superior Court "Incompetent to Stand Trial."[19]   During that time

16   they are often housed in isolation, denied commissary privileges, denied visits

17   and phone calls.   Sometimes, mentally ill detainees are literally housed in

18   rubber-lined rooms.[20]   In denying defendants' motions to dismiss the complaint,

19   the court found that the plaintiffs allegations that CFMG participates in the

20   pattern and practice of intentionally delaying sufficient psychiatric care; that

21   CFMG has consistently understaffed the Ventura county jails; that CFMG

22   "provided little or no individual CFMG treatments to inmates with mental

23

24   [17] Brad Branan, *California for-profit company faces allegations of inadequate inmate care,* January 17, 2015, Sacramento Bee, at p. 2, "Staffing Profit."
25   www.sacbee.com/news/investigations/the-public-eye/article7249637.html

26   [18] *Ibid* Docket 49, Second Amended Complaint, at pgs. 10-11, ¶'s 23-27.

27   [19] *Mathew Scott et al v. California Forensic Medical Group et al* C.D. Cal. Case No. 2:16-cv-0384 DSF (RAOx)

28   [20] Christopher Zoukis, *Mentally Incompetent Detainees Stuck in California jails Spark Class Action Lawsuit, Fines*, 6/5/2018, Prison Legal News, P. 32.

health problems, even for inmates who are acutely or chronically mentally ill." The district court found that CFMG and the individual defendants could be held liable.[21] Amended complaints and answers are ongoing; CFMG and COUNTY, ADLER, POLLACK, and Dr. FITHIAN were named in their individual capacity.[22]

57) The progress of these cases is demonstrative of Defendants' ongoing and unabated lack of treatment beds for mentally ill inmates, the facility is not designed for treatment or for evidence-based programming, diminishing effectiveness of treatment, mental-ill inmates do not have access to higher level of programming due to facility limitations.[23] H.I.G./CFMG defendants continue a pattern, custom and practices of unconstitutional conduct, incentivized by financial profiting at the cost of harming and violating the constitutional rights of the most vulnerable population in our society – the sick and helpless mentally ill human beings detained in jails without any access to alternative medical care.

58) <u>Oct 1, 2018,</u> undeterred by the knowledge of deaths caused by ongoing unconstitutional lapses, inadequate and incompetent CFMG medical care provided to inmates in COUNTY, VCSD and throughout the state, causing serious injuries and deaths, H.I.G. announced this unity of ownership and interest with CFMG (which is now Wellpath, supra fn. 1-4 at p. 8) is estimated to generate $1.5 billion annually.[24]

---

[21] *Scott, supra* at Docket 103, *Order re: Defendants' Motion to Dismiss* at pp. 26-28.

[22] *Scott, supra* at Docket 131, *Amended Answer to Amended Complaint/Petition 125 filed by defendants Adler, CFMG Fithian and Pollack.*

[23] *Scott, supra* at Docket 125, pp.45-46.

[24] HIG Capital, "Correct Care Solutions and Correctional Medical Group Companies Join Forces to Deliver Best-in-Class Healthcare." HIG Capital News, October 1, 2018, https://higcapital.com/news/release/1128.

**c) Defendants' Custom, Pattern and Practice of Failing to Provide Constitutionally Required Mental Health Treatment and Security Is Widespread and Ongoing.**

59) The following factual allegations, similarly apply to **Section b** above and the supervisor Defendants.

60) H.I.G./CFMG and their employees, supervisors, directors, managers Dr. FITHIAN, HUSTEDT, REYNA and HALLMAN have a unity of ownership and unity of purpose and interest that extends to all CFMG providers of health care in all county jails where CFMG does business. A bird's eye view of other California Counties is demonstrative of their unconstitutional practices, customs and policies in COUNTY and VCSD.

61) In a 2002 lawsuit over constitutional violations resulting in the suicide of a young man in Yolo County jail, Dr. FITHIAN conceded in deposition that he had written a letter to one of his Yolo County employees expressing concern that inmates were making "too many emergency room visits, hospitalizations and orthopedic visits." This confirms that profit motive prevails over patient indicated hospital care. The case settled for more than $800,000. [25]

62) Jan. 2015, arising from the suicide death of Mr. Hatfield, a 38-year old mentally ill man in Lake County jail in California, the subsequent litigation found that a CFMG nurse received paperwork from the hospital detailing his psychotic state but she said that she did not review it because that was the job of another nurse who is not scheduled to work for another day and a half. Following a settlement of the case, in an investigative report it was alleged that CFMG has faced allegations that it failed to provide proper care in dozens of

---

[25] Brad Branan, *California for-profit company faces allegations of inadequate inmate care,* January 17, 2015, Sacramento Bee, at p. 3. www.sacbee.com/news/investigations/the-public-eye/article7249637.html

U.S. District court cases over the last decade.  *Id.* at p. 1.

63)    According to state Department of Justice's records, 72 people committed suicide in the last decade while in a jail served by CFMG.  In recent years, the company's suicide prevention efforts have been challenged in the federal lawsuits in Monterey and Lake Counties, as well as Ventura County.  In his examination of the Monterey County jail, Dr. Pablo Stewart, an expert hired by plaintiffs in the case, reviewed three suicides since 2010. "In each case, problems with the jail's mental health and suicide prevention programs appear to have contributed to the suicides," he wrote. He pointed to inmates who were not given medicine or psychiatric consultation prior to their deaths. *Id.*, at p.4.

64)  In a 10-year period ending May 2014, ninety-two people died of suicide or a drug overdose while under the care of CFMG, according to a Sacramento Bee analysis of a state Department of Justice database. CFMG's population-adjusted rate for such deaths is about 50 percent higher than in other county jails. Most of the people who died in such cases were not yet convicted of a crime, according to the state database, as is the case for most jail fatalities. *Id.* at p.2.

65)  In 2013-2014 Santa Cruz County Grand Jury addressed a multitude of deaths in the jail where CFMG provided services.[26]  The investigation reviewed five in-custody deaths between August 2012 and July 2013 at the County Main Jail. Four of these deaths occurred after CFMG had assumed medical responsibility for the jail.  All of the individuals who died in custody had medical problems or mental health problems or both.  "In this environment, the process for classifying, monitoring, and treating high risk persons needed to be carefully formulated and executed" the report concluded. In all of the in-custody death

---

[26] *2013 – 2014 Five Deaths in Custody -- An Investigation of In-Custody Deaths*, Santa Cruz County Grand Jury May, 2014.  http://www.co.santa-cruz.ca.us/Departments/GrandJury/2018-2019GrandJuryReportsandResponses.aspx

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

cases, the report identified failures a critical points in the process, individuals were incorrectly classified not properly monitored, and inadequate treatments were applied." *Id.*, at pg. 2. Of the four deaths two were suicides by hanging.

66) To put the deaths in perspective, the report noted that "a total of 885 jail deaths occurred nationally in 2011. The vast majority of jails reported 0 deaths, 13% reported a single death, 6% reported 2 or more deaths, and Santa Cruz County recorded 5 deaths during an 11 month period spanning 2012 – 2013." *Id.*, pp. 3-4. The lengthy report makes multiple findings and recommendations, many of which found failures of CFMG procedures, personnel failures, insufficient oversight, treatment and policies. *Id.*, pp. 15-18.

67) Similarly in 2013, plaintiffs filed a class action against the County of Monterey and CFMG alleging unconstitutional conditions of confinement. The Court granted a preliminary injunction.[27]    Four stipulated experts found inadequate policies and practices for continuing prescription medications, substandard policies and practices of identifying and treating newly booked inmates for drug and alcohol withdrawal, administrative segregation units that put inmates at an unacceptable risk of suicide. (*Id.*, at *933.)

68) The court noted that since 1984 CFMG had contracted to "follow all County policies and work with County to implement additional policies governing such matters as healthcare staffing, access to prescriptions, emergency care and mental health services. The neutral expert that was appointed to evaluate the adequacy of the medical care found that "[T]he jail's medical staffing is 40 – 70% less than it should be at all levels, leading to inadequate intake, evaluation, management and surveillance." *Id.*, at *937. "Almost every important policy governing medical care suffered from serious infirmities: intake, requests for

---

[27] *Hernandez v. County of Monterey*, 110 F. Supp. 3d.* 929 N.D. Cal. (2015) 2015 U.S. Dist. LEXIS 49862.

emergency services, continuing medications, scheduling care, segregation and special needs." *Id.*, at *937-938.  "The system-wide policies and practices for providing mental health care place inmates at a risk of serious harm." *Id.*, at *938.

69) In April 2015, the *Hernandez* court found CFMG and the County's policies and practices relating to suicide and self-harm prevention constituted "deliberate indifference to plaintiff's serious medical needs, particularly for the mentally ill.  Since 2010 … the jail had a suicide rate that is nearly twice the national average for jail populations in 2011." *Id.*, at *946.  "Defendants fail to engage in practices – conducting pre-segregation screening, providing adequate structured and unstructured out of cell time, utilizing a suicide risk assessment tool --known to reduce the risk of created by administrative segregation."

70) In May 2015, *Hernandez v. County of Monterey* settled with the term that CFMG employ a full-time psychiatrist and have another on-call at all times.[28] Three years later, on April 2, 2018, CFMG admitted that it only had recently hired an on-site – mental health professional due to difficulty in filling the position. The District Court judge stated "Maybe you need to offer a better salary."  CFMG suggested rather than having a full-time psychiatrist, they asked the court to allow "telepsychiatry" – essentially conducted mental health screenings by video rather than in person.  The court stated: "just to allow tele-psychiatry any time, I'm not in favor of that." *Id.* at p.2.

71) While the *Hernandez* case was ongoing, on April 2016, CFMG and Monterey paid $1.1 million to settle another similar suicide case (Joshua Claypole), *Id.* at

---

[28] Derek Gilna, *Despite class- action settlement, mental health problems at CA Jail persist*, April 2, 2018, Prison Legal News, p.1, https://www.Prisonlegalnews.org/news/2018/apr/2/despite-class-action-settlement-mental-healthcare-problems-ca-jail-persist/

p. 1; and on Sept. 13, 2017, another factually similar suicide case was filed against CFMG,[29] which was later settled for $1.6 million.

72)  June 18, 2018, CFMG and Lake County paid $2 million to settle a federal civil rights lawsuit involving another suicide of an 86 year old woman. [30] The case revealed "its jail's medical services provider was in violation of state regulations." Id.  CFMG was using "lesser trained vocational nurses to make key medical and mental health decisions for inmates." *Id.*  The correctional officers were faulted for not doing proper cell checks at the time plaintiff's suicide was occurring.[31]  (This was the third lawsuit against CFMG and Lake County involving a jail suicide.) *Id.*

73)  August 31, 2018, the suicide death of Lawrence "Jake" Spies Jr. in the El Dorado County jail where CFMG works agreed to pay $1 million. [32] The suit alleged that the inmate's death was preventable. *Id.*

74)  September 7, 2018, Larra Gillis died in the hospital after spending about 28 hours at the Monterey County jail.  She was placed in a cell and the initial claimed medical assessment lasted only 12 seconds and consisted of a nurse looking through a window into the safety cell.  The Complaint alleged she was

---

[29] *De Anda, et al. v Herr, Taylor Fithian, Kip Hallman, et al.* Case No. 5:17-cv-05320-SVK (9/13/2017).

[30] Julie Johnson, *Lake County settles jail suicide case for 2 million*, June 18, 2018, The Press Democrat, https://www.pressdemocrat.com/news/8446145-181/lake-county-settles-jail-suicide?sba=AAS

[31] Elizabeth Larson, *County reaches $2 million settlement in federal lawsuit over 2015 jail suicide*, June 15, 2018, Lake County News http://www.lakeconews.com/index.php/news/56429-county-reaches-2-million-settlement-in-federal-lawsuit-over-2015-jail-suicide

[32] Mountain Democrat staff writers, *Spies family awarded more than 1 million for wrongful death*, August 31, 2018, Mountain Democrat News https://www.mtdemocrat.com/news/spies-family-awarded-more-than-1-million-for-wrongful-death/

detained 28 hours "with no food and received only one cup of water."[33]  "She
was found nearly unconscious and covered in feces…and taken to the hospital
suffering from sepsis, severe dehydration and kidney failure and never regained
consciousness before her death 2 weeks later."  *Id.* The County and CFMG
settled for $825,000.  *Id.*

75) On January 5, 2019, as alleged above, COUNTY and H.I.G./CFMG
Defendants and DOES 1-10 failed to properly train, assign, supervise, and guide
their staff and medical personnel assigned to the VCSD to take immediate
measures to ensure sufficient and competent medical staffing that a mentally ill
suicidal detainee, like ANDREW be referred to a hospital or psychiatric facility
for care and treatment if they were not able to provide him such higher level of
mental health care in VCSD jail.

### (d) Defendants' Actions and Inactions Are a Proximate Cause of Plaintiffs' Harm.

76) As a consequence of all Defendants' actions and/or inactions and/or
misconduct and/or willful refusal to adhere to suicide watch protocols as set
forth above, they facilitated ANDREW committing suicide.

77) At all material times, and alternatively, the actions and omissions of each
defendant were intentional, wanton and/or willful, conscience shocking,
reckless, malicious, deliberately indifferent to Plaintiffs' rights, done with
malice, grossly negligent, negligent, and objectively unreasonable.

78) Defendants' wrongful conduct herein was done, at least in part, because they
were motivated by their commitment to make a profit, as per FITHIAN and

---

[33] Tom Wright, *Monterey County Jail medical services provider to pay $825,000 in wrongful death of inmate*, September 18, 2018, Monterey Herald https://www.montereyherald.com/2018/09/18/monterey-county-jail-medical-service-provider-to-pay-825k-in-wrongful-death-of-inmate/

1    HUSTEDT, from "investing in the healthcare and corrections sectors." (See fn.
2    3 and ¶ 50 above.)

3                    **(e) Damages Suffered By Plaintiffs.**

4    79)  As a direct and proximate result of each Defendants' acts and/or omissions as
5        set forth above, ANDREW suffered damages, pain and suffering, anxiety,
6        confusion, disorientation, emotional distress, loss of life pursuant to federal civil
7        rights law and deprivation of his constitutional rights in an amount not yet
8        ascertained but to be proven.

9    80)  Plaintiffs Mr. RICARDEZ and Mrs. PEREZ, individually, sustained injuries
10       and damages, past and future in an amount not yet ascertained but to be proven:

11                    (a) Wrongful death of their son;
12                    (b) Loss of support and familial relationships, including loss of love,
13                        companionship, comfort, affection, consortium, society, services,
14                        solace, and moral support; and,
15                    (c) Emotional distress (from violation of their personal constitutional
16                        rights).

17   81)  Plaintiffs Mr. RICARDEZ and Mrs. PEREZ as Successors in Interest for the
18       Estate of Andrew Ricardez, sustained the following injuries and damages, past and
19       future, among others:

20                    (a) Hospital and medical expenses (incurred by decedent);
21                    (b) Coroner's fees, funeral and burial expenses; and,
22                    (c) Decedent's loss of life and pain and suffering before his death,
23                        pursuant to federal civil rights law.

24   82)  All Plaintiffs seek all damages, penalties, attorney fees and costs as
25       recoverable under 42 U.S.C. §§ 1983 and 1988, and as otherwise allowed under
26       California and United States statutes, Codes, and common law, including but
27       not limited to three times actual damages pursuant to Cal. Civ. Code § 52.

28

## CLAIM ONE
### (42 U.S.C. §1983) – DELIBERATE INDIFFERENCE
### AGAINST Sheriff AYUB, Dr. FITHIAN, Dr. ADLER, Dr. POLLACK, Doe NANDA and DOES 1-10 FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE 4th, 14TH AMENDMENT.

83)  Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

84)  Defendants Dr. FITHIAN, Dr. ADLER, Dr. POLLACK, Doe NANDA, Sheriff AYUB, and DOES 1-10, deprived ANDREW of the rights, privileges and immunities secured by the Fourth and Fourteenth Amendment of the United States Constitution, by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of medical or mental health care and/or access thereto for a serious but treatable medical or mental health condition.

85)  These Defendants knew or should have known that ANDREW had suicidal ideations or behaviors as set forth above; Defendants knew or must have known that ANDREW could not care for himself; he could not seek outside jail medical care, nor advocate for his urgently needed psychiatric intervention, and/or appropriate suicide observation protocols.  Defendants ignored their duty of care to ANDREW, with their actions and inactions they caused lapses and a lack of continuum of indicated care and treatment and indicated appropriate housing, which they knew or should have known, would cause or worsen his already deteriorating mental health condition.

86)  These Defendants knew or must have known that ANDREW's medical or mental health condition was serious but treatable and that ANDREW required access and delivery to urgently needed medical/mental health care, and they further had a duty to provide ANDREW reasonable security and indicated housing to accommodate his mental health condition.  These Defendants knew

1    or should have known that if not treated, ANDREW's mental health would

2    continue to deteriorate, worsen and cause him harm and/or death.

3    87)  Sheriff AYUB and DOES 1-10, failed to promulgate and implement policies,

4    procedures, and practices to ensure that ANDREW was housed in an indicated

5    and appropriate housing unit pursuant to the laws of the State of California,

6    pursuant to their duty and responsibility to provide appropriate housing, safety,

7    security and observation to ensure ANDREW's safety and security at all times,

8    and that the deputies responsible to monitor, observe and provide for

9    ANDREW's security and safety at all times did so competently.

10   88) Dr. ADLER provided medical care and treatment to ANDREW and is also

11   medical director responsible for the direct patient care, supervision and

12   discipline of CFMG's staff in Ventura COUNTY at VCSD, is responsible for

13   his deliberate indifference to the serious psychiatric and medical needs of

14   ANDREW.  Dr. FITHIAN is VCSD jail supervising psychiatrist and directly

15   responsible to ensure that ANDREW was properly provided competent

16   psychiatric medical and nursing care and treatment, but he failed to take action

17   and acted with deliberate indifference to ANDREW's care and treatment or lack

18   thereof.  Dr. POLLACK is the jail psychiatrist also responsible for his direct

19   written orders and patient care and treatment, and is responsible for his

20   deliberate indifference to the serious psychiatric and medical needs of

21   ANDREW. Doe NANDA provided telephonic advice and medical orders

22   regarding ANDREW without seeing him and without competent access to

23   evaluating his psychiatric indicated mental health care and acted with deliberate

24   indifference to ANDREW's care and treatment and condition.

25   89) As a result of these Defendants' deliberate indifference and/or reckless

26   disregard for ANDREW's security, safety, wellbeing, and appropriate and

27   indicated housing and observation and/or transfer to a higher level of care and

28   their disregard and ignoring of said inadequate and incompetent conditions for

ANDREW's needed medical care and treatment, ANDREW suffered damages as set forth.

90)  By the actions and omissions described above, defendants and each of them, violated 42 U.S.C. § 1983, depriving Plaintiffs of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the U .S. Constitution:

>   a.  The right to be free from an unreasonable ongoing seizure as a pretrial detainee as secured by the Fourth and Fourteenth Amendments;
>
>   b.  The right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment;
>
>   c.  The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments.

91)  Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiffs (individually and on behalf of ANDREW).

92)  Plaintiffs incorporate by reference ¶¶ 80-83 herein.

**<u>CLAIM TWO</u>**
**(42 U.S.C. §1983) - SUPERVISORY LIABILITY**
**AGAINST SHERIFF AYUB, DR. FITHIAN, DR. ADLER, DR. POLLACK,**
**HALLMAN, REYNA, HUSTEDT and DOES 1-10**

93)  Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

94)  Furthermore, on or before January 5, 2019, Defendants Sheriff AYUB, Dr. FITHIAN, DR. ADLER, DR. RONALD POLLACK, HALLMAN, REYNA

AND HUSTEDT and DOES 1-10 failed to properly train, assign, supervise, and guide their staff and medical personnel assigned to the VCSD, including but not limited to CFMG and DOES 1-10, to take immediate measures to ensure that a mentally ill and suicidal pre-trial detainee like ANDREW, be referred to a hospital or psychiatric facility for the care and treatment of the mentally disordered, or to any other available public or private treatment facility that will promote ANDREW's speedy restoration to mental competence.

95)   Defendants Sheriff AYUB and DOES 1-10, acted with deliberate indifference to their responsibility and duty to ANDREW, and their actions and/or inactions in failing to supervise their subordinates to take adequate measure to protect inmates, such as ANDREW, upon release from suicide watch; maintained an insufficient and inadequate number of safety cells/or beds, to house mentally ill inmates like ANDREW to keep them safe; maintained insufficient and inadequate monitoring and surveillance of safety/sobering cells, such as the one where they house ANDREW; they were deliberately indifferent to the design and location of the cell where ANDREW was housed in violation of Title 15 and 24 of the Cal. Administrative Code.

96)   Each of the H.I.G./CFMG supervisors, managers, directors, executives' acts and/or omissions and failure to supervise their subordinates were taken with deliberate indifference to the medical care of inmates, such as ANDREW, as set forth above.

97)   Each of the H.I.G./CFMG Defendants and DOES 1-10 failed to supervise the medical-mental health services for detainees and knew or should have known Ventura County jail suffered from extreme overcrowding, inadequate and/or incompetent medical staffing, as set forth above.  Thereby violating the constitutional rights of patient-inmates' state and federal laws and departmental policy and procedure.

98)   As a direct and proximate result of the actions, omissions, and practices of

1    Defendants Sheriff AYUB, DR. FITHIAN, Dr. ADLER, Dr. POLLACK

2    HALLMAN, REYNA AND HUSTEDT and DOES 1-10, as described above,

3    Plaintiffs sustained serious and permanent injuries and are entitled to damages

4    as set forth above at ¶¶ 80-83.

5    99)    Plaintiffs also request punitive damages against these individual supervisor

6    Defendants.

7

8    **COUNT THREE**
    **(42 U.S.C. §1983) - *MONELL***

9    **AGAINST COUNTY, VCSD, H.I.G./CFMG, and DOES 1-10 FOR A**
    **CUSTOM, POLICY AND/OR PRACTICE OF CAUSING**

10    **CONSTITUTIONAL VIOLATIONS.**

11    100) Plaintiffs reallege each and every paragraph in this Complaint as if fully set

12    forth here.

13    101) At all times herein mentioned, Defendants COUNTY, VCSD, H.I.G./CFMG,

14    and each of them, maintained a longstanding, pervasive, custom, pattern, and/or

15    practices, and each defendant knew that the following custom, pattern, practice

16    or policies posed this risk of harm.  Some of these customs, patterns, practices

17    or policies include, but are not limited to, the following:

18        a.  To deny inmates at the COUNTY'S jail access to medical attention;

19        b.  To fail to properly classify, house and/or monitor inmates suffering

20            from mental health disabilities;

21        c.  To fail to provide medical or mental health care for inmates with

22            serious medical needs;

23        d.  To fail to maintain appropriate and indicated medical and mental

24            health staffing;

25        e.  To fail to use appropriate National and State accepted jail minimum

26            standards, procedures and practices for handling suicidal mentally ill

27            and/or emotionally disturbed persons;

28        f.  To fail to institute, require, and enforce proper and adequate training,

supervision, policies, procedures and practices concerning handling mentally ill and/or emotionally disturbed inmates at the County Jail;

g. H.I.G./CFMG placed their financial interests and profits before their duty and responsibility to provide competent medical/mental health care to patient/inmates and to provide sufficient and competent medical staff; and,

h. To cover-up violations of constitutional rights by any or all of the following:

   i. by failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, polices, practices, and procedures described above in subparagraphs (a) through (e);

   ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the County Jail as described above in subparagraphs (a) through (f);

   iii. by allowing, tolerating, and/or encouraging deputies and jail personnel to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster deputies and jail personnel's stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct, by withholding and/or concealing material information;

   iv. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff department personnel, and H.I.G./CFMG personnel whereby an officer or member of the department and/or H.I.G./CFMG medical staff working in the correctional system under contract, does not provide adverse information against a fellow deputy or member of the

department or co-worker of H.I.G./CFMG; and,

v. to use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of misconduct, including claims made under California Government Code § 910 et seq.

102) The unconstitutional customs and practices of Defendants were approved, tolerated and/or ratified by policy making officers for COUNTY, VCSD and H.I.G./CFMG.

103) The aforementioned customs, policies, practices, and procedures were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

104) As a direct and proximate result of the unconstitutional above alleged actions, omissions, customs, policies, practices and procedures as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages as set forth in ¶¶ 80-83 above.

105) Plaintiffs also seek punitive damages against CFMG and H.I.G. pursuant to 42 U.S.C. § 1983 and all applicable California Law.

## COUNT FOUR
## VIOLATION OF ADA (TITLE II), REHABILITATION ACT, AND THE CALIFORNIA UNRUH ACT AGAINST DEFENDANT COUNTY.

106) Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

107) ANDREW  was a "qualified individual," with a mental illness and disability and impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k), and Cal. Civ. Code §§ 51 et

seq., 52, 54, 54.1, Cal. Gov't Code § 12926, and qualified as an individual with a mental disability under California law, and he met the essential eligibility requirements of COUNTY programs to provide access to mental health care services for its detainee/inmates patients in County's jails while they are in custody.

108) Defendant COUNTY's jail and mental health services are places of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. § 12181(7) (F), the Rehabilitation Act, 29 U.S.C. § 794, Cal. Civil Code §§ 51 et seq., 54, 54.1, and 12926 of Cal. Govt. Code, as explicated by the regulations promulgated under each of these laws.

109) Defendant COUNTY's jail and County mental health services contracted for between COUNTY and H.I.G./CFMG "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. § 794 (b).

110) Under the ADA, COUNTY is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

111) Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a) (2).

112) COUNTY is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

113) 42 U.S.C. § 12182 (b) (1) (A) (iii) provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation *that is different or separate* from that provided to other individuals." (Emphasis added).

114) COUNTY violated the ADA, RA, and discriminated against ANDREW and Plaintiffs of their ADA, RA, and state protected rights by: (a) failing to provide services or accommodate ANDREW, with access to the programs and services designated mental health hospitals and facilities for persons who qualify for access and services under Penal Code § 1370 (a)(2) or Welfare and Institutions Code § 5150; (b) failing to provide services or accommodate ANDREW as indicated, with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and suffering from mental illness as required by Title 24 and Title 15 of the California Administrative Code and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities.

115) As a result of the acts and misconduct of the Defendants and each of them, complained of herein, ANDREW died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above in ¶¶ 80-83. Plaintiffs RICK RICARDEZ and ANGELA PEREZ have suffered loss of love society and claim damages for the wrongful death of their adult son in an amount not yet ascertained but to be proven.

//

//

//

## COUNT FIVE
### VIOLATION OF CAL GOV. CODE § 845.6 -- AGAINST DEFENDANTS COUNTY, VCSD, H.I.G./CFMG, AYUB, FITHIAN, ADLER, AND POLLACK AND DOES 1-10

116) Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

117) Defendants COUNTY, VCSD, H.I.G./CFMG, AYUB, FITHIAN, ADLER, POLLACK, Doe NANDA and DOES 1-10 and other individual DOE Defendants knew or had reason to know that ANDREW was in need of immediate and higher level of medical and psychiatric care, treatment, and observation and monitoring, that he required special housing and security for his own safety and well-being, and each failed to take reasonable action to summon and/or to provided him access to such medical care and treatment and/or provide him housing accommodations indicated for him under such circumstances. Each such individual defendant, employed by and acting within the course and scope of his employment with Defendant COUNTY, VCSD, H.I.G./CFMG, AYUB, FITHIAN, ADLER, POLLACK, Doe NANDA knowing and/or having reasons to know this, failed to take reasonable action to summon and/or provide ANDREW access to such care, treatment, and housing in violation of Cal. Gov. Code § 845.6.

118) As legal and proximate cause of the aforementioned acts of these Defendants, Plaintiffs were injured as set forth above and their losses entitle them damages according to California Law.

## COUNT SIX
### VIOLATION OF CIVIL CODE §52.1 –
### AGAINST ALL DEFENDANTS and DOES 1-10

119) Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

120) By their acts, omissions, customs, and policies, each Defendant acting in

concert/conspiracy, as described above, violated Plaintiffs' rights under California Civil Code §§ 52 and 52.1, and the following clearly-established rights under the United States Constitution, the California Constitution, and California law:

    a. The right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment, and by Cal. Const. Article 1, Sections 7 and 17;

    b. The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments, and by Cal. Const. Article 1, Sections 1 and 7;

    c. The right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and obtain safety, happiness and privacy, as secured by the California Constitution, Article 1, Section 1; and,

    d. The right to medical care as required by Cal. Gov. Code § 845.6.

121) As a direct and proximate result of Defendants' violation of California Civil Code §§ 52, 52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages (as set forth above in ¶¶ 80-83), and against each and every Defendant are entitled to relief as described above, including all damages and treble damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys' fees, and civil penalties.

122) Plaintiffs also seek punitive damages against all individual Defendants in their individual capacities.

//

### COUNT SEVEN
### NEGLIGENCE AGAINST ALL DEFENDANTS
### and DOES 1-10

123) Plaintiffs reallege each and every paragraph stated above in this complaint as if fully set forth here.

124) At all times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

125) At all times, each Defendant owed Plaintiffs the duty to act with reasonable care. These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

    a. To provide, or have provided competent, prompt and appropriate medical and psychiatric care to ANDREW;

    b. To provide safe and appropriate jail custody for ANDREW including reasonable classification, monitoring, and housing;

    c. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

    d. To refrain from abusing their authority granted them by law;

    e. To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

126) Additionally these general duties of reasonable care and due care owed to Plaintiffs by Defendants and each them including DOES 1-10,  include but are not limited to the following specific obligations:

    a. To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person (i) who was responsible for providing medical care for ANDREW; (ii) who was responsible for the safe and appropriate jail custody of ANDREW; (iii) who was

responsible for properly and reasonably classifying, housing, and monitoring ANDREW; (iv) who denied ANDREW medical attention or access to medical care and treatment; and/or (vi) who failed to summon necessary and appropriate medical care;

b. To properly and adequately hire, supervise, train, retain, investigate, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

c. To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs' rights.

d. To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth herein.

127) Defendants, through their acts and omissions, breached the aforementioned duties owed to Plaintiffs.

128) As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as described above in ¶¶ 80-83 and as applicable to this claim for Negligence.

## COUNT EIGHT
## MEDICAL NEGLIGENCE -- AGAINST DEFENDANTS FITHIAN, ADLER, POLLACK, DOE NANDA, H.I.G./CFMG, COUNTY, VCSD, AND DOES 1-10.

129) Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

130) ANDREW was under the care and treatment of Defendants FITHIAN, ADLER, POLLACK, Doe NANDA, COUNTY, H.I.G./CFMG and VCSD, who were required to examine, treat, monitor, prescribe for and care for him and to

provide him with medical attention for the mentally ill and psychiatric services and treatment. Defendants DOES 1-10, FITHIAN, ADLER, POLLACK, Doe NANDA, and DOES 1-10, acting within the scope and course of their employment with Defendants COUNTY, VCSD, H.I.G./CFMG negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer ANDREW to specialist mental/medical care providers; negligently failed to provide physician, psychiatric, psychological care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee ANDREW.

131) Defendants and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely refer ANDREW for medical, hospital and/or psychiatric care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for ANDREW was provided.

132) Plaintiffs further allege that other presently unknown supervisory personnel named as DOE defendants, including agents and employees of FITHIAN, ADLER, POLLACK, Doe NANDA, COUNTY, H.I.G./CFMG and VCSD, and defendants themselves, failed to conduct appropriate investigatory procedures, and/or follow policies and protocols, including but not limited to involuntary mental health treatment and transfer, implementing interventions and assessment re: increased risk of suicidal behaviors, evaluation and documentation for risk factors so appropriate interventions may be initiated, to determine the need to obtain medical and psychiatric services for ANDREW

while in Defendants' care, custody, and control.

133) As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages as described above in ¶¶ 80-83 and as applicable to this claim for Medical Negligence, to be proven at time of trial.

## **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

   a. Compensatory damages in an amount according to proof and which is fair, just and reasonable;

   b. All other damages, penalties, prejudgment interest, and attorney fees and cost of suit as allowed by 42 U.S.C. §§ 1983 and 1988, the ADA and RA, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, 54.1, and as otherwise may be allowed by California and/or federal law;

   c. Punitive and exemplary damages against H.I.G., CFMG, Dr. FITHIAN, Dr. ADLER, Dr. POLLACK, Doe NANDA, REYNA, HALLMAN, HUSTEDT, Sheriff AYUB, and DOES 1-10 under 42 U.S.C. §1983 and section 1988 and Federal and California Law as to all other Defendants (except municipal defendants) in an amount sufficient and appropriate to punish each said individual defendant and entity and deter them from such similar future misconduct and deter others from engaging in similar misconduct;

   d. For violation of California Civil Code §§ 52 and 52.1 statutory damages and reasonable attorney fees;

e. Such other and further relief, including injunctive and/or declaratory relief as this Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

All Plaintiffs hereby demand a trial by jury.

Dated: January 3, 2020                    Respectfully submitted,

**PACHOWICZ | GOLDENRING APLC**

/s/ Jennie Hendrickson
_____
Jennie Hendrickson
Attorneys for Plaintiff ESTATE OF ANDREW RICARDEZ, Deceased, Through His Successor In Interest, Rick Ricardez and for RICK RICARDEZ, Individually and As Successor In Interest.

**SONIA MERCADO & ASSOCIATES**

/s/ Sonia M. Mercado
_____
Sonia M. Mercado
Attorney for Plaintiff ANGELA PEREZ, Individually and As Successor In Interest.